533 So.2d 797 (1988)
Barbara LAKE, et al., Appellants,
v.
James E. CLARK, et al., Appellees.
No. 88-87.
District Court of Appeal of Florida, Fifth District.
September 29, 1988.
Rehearing Denied November 17, 1988.
*798 Wilmer H. Mitchell of Mitchell & Condon, P.A., Pensacola, for appellants.
Harry Anderson of Anderson & Miller, P.A., Orlando, for appellee Dr. James E. Clark.
Gary L. Dirlam of Gurney & Handley, P.A., Orlando, for appellee Adventist Health Systems Sunbelt, Inc., d/b/a Florida Hosp.
Robert D. Henry of Maguire, Voorhis & Wells, P.A., Orlando, for appellee Robert A. Lieberman, M.D., P.A.
DAUKSCH, Judge.
This is an appeal from a judgment in a medical malpractice case. Appellants assert two grounds for reversal. First, they say the trial judge erred in excluding testimony of a witness who was called to testify regarding his opinion about the alleged breach of the standard of care required of physicians. Second, appellants say that the trial court erred in refusing to grant a new trial because one defendant, the hospital, and its attorney concealed the name of a material witness. As to the first issue we reverse. This reversal makes the second issue moot but we hasten to say there is no merit to that issue; no concealment occurred, in our opinion.
The first issue involves whether David Abramson is a "similar health care provider" and thus entitled to testify and give his opinion about whether the hospital and the doctor deviated from the "prevailing professional standard of care in a given field of medicine." § 768.45(2)(c)2., Fla. Stat. (1985). The applicable statute generally governing this situation is section 768.45. This statute says that the plaintiff must prove the accused doctor and hospital breached the "prevailing professional standard of care for that health care provider." Then it defines the term "prevailing professional standard of care" and sets qualifications for witnesses who should be permitted to give "expert" opinions regarding whether the defendant breached the standard of care.
The statute in pertinent part says:
(c) The purpose of this subsection is to establish a relative standard of care for various categories and classifications of health care providers. Any health care provider may testify as an expert in any action if he:
1. Is a similar health care provider pursuant to paragraph (a) or (b); or
2. Is not a similar health care provider pursuant to paragraph (a) or paragraph (b) but, to the satisfaction of the court, possesses sufficient training, experience, and knowledge as a result of practice or teaching in the specialty of the defendant or practice or teaching in a related field of medicine, so as to be able to provide such expert testimony *799 as to the prevailing professional standard of care in a given field of medicine. Such training, experience, or knowledge must be as a result of the active involvement in the practice or teaching of medicine within the 5-year period before the incident giving rise to the claim.
The claim here resulted from the death of appellants' two newborn children. The mother suffered a medical emergency and was forced to call her doctor to get help. Her doctor was unavailable so his assistant, Dr. Clark, also a medical doctor, gave instructions to her and the father to go immediately to the hospital for treatment. The complaint alleges the instructions were inadequate, the treatment was too late and ineffective, and that the hospital was unprepared for the treatment and was negligent in its admission and care practices.
In order to prove their case the plaintiffs sought to publish David Abramson's deposition. In the deposition Abramson said the standard of care was breached by both the physician and the hospital; his testimony was critical to the plaintiff's case. The fact that it was corroborative of other testimony, or even cumulative to it, does not matter. A medical malpractice case is always necessarily a battle of expert witnesses. Within only very broad limits all qualified opinion testimony should be allowed; that is, not disallowed because it is cumulative to other evidence.
Abramson's qualifications are as follows:
1. Graduate of Georgetown University School of Medicine and its graduate school.
2. Two years of training in pediatric medicine.
3. Founder of a division in newborn, perinatal medicine at Georgetown University.
4. Director of Nurseries at Georgetown University which included teaching full time in the Department of Obstetrics and Gynecology and in the Department of Pediatrics and research in the field of obstetrical or reproductive medicine.
5. Responsible for the high risk reproductive program and patient care at Georgetown University and its affiliated hospitals.
6. Certified in pediatric, perinatal, and emergency medicine.
7. Affiliated with Medical-Legal Consulting Services, Inc., for several months in which he determined whether certain health care providers had deviated from accepted standards of care.
8. Employed as a private physician.
9. Associate Director, Chairman and Director of the Emergency Medical Department at Southern Maryland Hospital.
10. University Guest Instructor of pediatrics, obstetrics, and gynecology throughout many major universities.
11. Founder and director of an emergency medical group known as Convenient Health Care under which he currently practices emergency, pediatric and reproductive medicine.
12. Consultant in fields of perinatal or neonatal medicine.
13. Currently licensed to practice medicine in Washington, Virginia, the District of Columbia, Maryland and Alabama.
14. Staff physician at Parkwood Hospital, Southern Maryland Hospital and Capitol Hill Hospital.
15. Expert witness in many medical malpractice cases.
Clark's qualifications are:
1. Graduate of Northwestern University Medical School; one-year internship at George Washington University with an emphasis in obstetrics and gynecology; three-year residency in obstetrics and gynecology at George Washington University.
2. Four years of specialized training in obstetrics and gynecology.
3. Specialized private practice in obstetrics and gynecology.

*800 4. Staff physician at Florida Hospital, Humana Lucerne Hospital, Winter Park Hospital and Orlando Regional Medical Center.
The alleged malpractice involves the failure of the doctor and the hospital to see to it that a surgical team was ready to perform the necessary emergency surgery to aid the mother and save the babies. There are various specific allegations and evidence regarding specific alleged defaults which need not be set out in detail.
The evidence offered by Abramson is critical to the plaintiffs' case and its exclusion was harmful. Because Abramson was sufficiently similarly qualified in related medical fields it was error to exclude his testimony. A new trial is warranted.
REVERSED and REMANDED for a new trial.
ORFINGER and DANIEL, JJ., concur.