543 So.2d 809 (1989)
DOCTORS MEMORIAL HOSPITAL, INC., et al., Appellants,
v.
Margie Lou EVANS and Bruce Wayne Evans, Appellees.
No. 88-633.
District Court of Appeal of Florida, First District.
May 4, 1989.
Jeffrey C. Fulford, of Adams, Hill, Fulford & Morgan, Orlando, for appellants.
Edwin B. Browning, Jr., of Davis, Browning & Schnitker, Madison, for appellees.
WIGGINTON, Judge.
Doctors Memorial Hospital, Inc., appeals from a final judgment in a medical malpractice action awarding damages, costs, and attorney's fees to the plaintiffs/appellees. We affirm in part and reverse in part.
Appellees brought suit against defendants Doctors Memorial Hospital, Inc. and Ray Johnson, a radiological technologist employed by the Hospital. In paragraph two of the complaint, Doctors Memorial was alleged to be a dissolved nonprofit corporation. Appellees' claim was that Ray Johnson, an employee of the Hospital, negligently treated and cared for Margie Lou Evans. It was further alleged that Johnson and the Hospital failed to inform Mrs. Evans of the possible complications that might result from the test Johnson was to administer to Mrs. Evans, and that her consent to such test was not informed.
Both the Hospital and Johnson moved to dismiss the complaint. The Hospital argued that it was a governmental hospital and had not received the requisite pre-suit notice due a governmental entity. Johnson moved to dismiss as an employee of a governmental *810 entity. Both motions were denied and the defendants responded. Motions for summary judgment were thereafter filed based upon the same grounds as the motions to dismiss. The affidavit of the hospital administrator was submitted attesting to his belief that the Hospital was a governmental hospital during the pertinent periods of time of Mrs. Evans' treatment. The motions were denied and the cause proceeded to trial.
Immediately prior to trial, the Hospital moved in limine to exclude evidence, testimony, and argument that Dr. B. Hegde, the radiologist in residence when the test was administered, was an agent or employee of the Hospital and was negligent or failed to obtain Mrs. Evans' informed consent. The motion was denied and the Hospital objected on that point throughout the course of the trial. During trial, appellees withdrew all claims that the Hospital and Johnson were negligent in the care and treatment of Mrs. Evans and proceeded strictly under the theory of their failure to obtain her informed consent.
Also during trial, the Hospital moved for a directed verdict, again on the basis of its governmental status. In denying the motion, the court stated that it felt it had made its position clear in denying the motion for summary judgment and did not invite any further argument from the parties, adhering to its earlier ruling. Thereafter, the Hospital informed the court that it had a few questions to ask Mr. William H. Anderson, the hospital administrator, dealing with the governmental status of the Hospital. The Hospital "proffered" the testimony of Anderson to the effect that it was Anderson's understanding based on his files and documents that the Hospital was a county hospital. Appellees' attorney objected to the proffer on the basis that Anderson was not qualified to give such an opinion. However, because Anderson's testimony was simply a proffer, the court, although inclined to agree with the objection, allowed the proffer to proceed. Anderson then testified as to the Hospital's exhibit 4 which was marked as such, according to the Hospital's attorney, "just for record purposes and not to be admitted into evidence or to the jury." The exhibit included several documents and letters attesting to the Hospital's status. Following the proffer, appellees' attorney objected to it on the basis of its being irrelevant and immaterial since appellees were suing a dissolved Florida corporation. The court concluded that, as far as the jury was concerned, counsel's observation was true and "in keeping with the rulings previously made at summary judgment." The court stated that exhibit 4 was not admitted for hearing before the jury and at that point defendants rested.
At the conclusion of the trial, the jury returned a verdict in Johnson's favor, finding that Johnson did not have a duty to obtain the informed consent of Mrs. Evans and that he did not fail to obtain her informed consent. However, the jury found that Dr. Hegde did have such a duty but failed to obtain Mrs. Evans' consent. The jury further found that Dr. Hegde was an agent or an employee of the Hospital at the time he provided care and treatment to Mrs. Evans and that he was 100 percent negligent. The jury assigned 0 percent negligence to Johnson and assessed damages against the Hospital at $75,000 on behalf of Mrs. Evans.
Post-trial motions of the Hospital for new trial and for judgment in accordance with motion for directed verdict were filed raising the Hospital's governmental entity theory as well as its position that appellees' claim against the Hospital for the conduct of Dr. Hegde was not supported by the pleadings, was not tried by the consent of the parties, was not supported by expert testimony, and did not meet the evidentiary requirements set forth by Florida law pertaining to proof required for an apparent agency claim. Additionally, the Hospital moved to limit its liability in accordance with section 768.28, Florida Statutes, which was also denied. Final judgment was entered against the Hospital for the amount of the verdict plus an award of costs and attorney's fees. The Hospital now raises several points for our review, but our disposition of Points I and IV makes unnecessary *811 further discussion of the remaining points.
Initially, we affirm the trial court's ruling that the Hospital was not a governmental entity based on our conclusion that there was insufficient proof of the Hospital's governmental status. Although the Hospital urges this Court to take judicial notice of certain statutory laws and resolutions of this state regarding the Hospital, the only documents submitted in exhibit 4 pertaining to mandatory notice under section 90.201, Florida Statutes, were chapters 31319 and 61-2938, Laws of Florida. Chapter 31319 was a 1955 Legislative Act providing for the purchase of Taylor County Hospital by Taylor County. Chapter 61-2938 was in turn a 1961 Act amending chapter 31319 and authorizing the Taylor County Board of County Commissioners to enter into a lease purchase contract with Taylor County Hospital for the purchase of a hospital owned by Taylor County Hospital. However, the remaining documents were either documents, such as the county attorney's opinion letters, of which this Court may not take judicial notice or which were not included in the proffer before the trial court, or, as was true with the Taylor County resolution, were not printed or certified copies as required by section 90.202(10), Florida Statutes. Based on what was actually before the trial court, we hold that the court did not err in finding that the Hospital had not proven its governmental status.
Despite our affirmance on the above point, we nonetheless must reverse on point IV and hold that the trial court erred by failing to direct a verdict in favor of the Hospital since the evidence was insufficient to support and sustain a claim against Dr. Hegde for failing to obtain the informed consent of Mrs. Evans. However, before we discuss this issue, we digress somewhat to explicate our position on point II under which the Hospital argued that the trial court erred by submitting the issue of Dr. Hegde's status as the Hospital's apparent agent to the jury when it was outside the scope of the pleadings and was not tried by the express or implied consent of appellant.
Although we believe that the complaint was not a model of clarity and could have initially confused the Hospital in the preparation of its defense, we note that approximately three months prior to trial the deposition of Dr. Hegde was taken at the Hospital's insistence. Dr. Hegde was questioned by both the Hospital's attorney and appellees' attorney as to his employment status with the Hospital. We additionally note the statement made by the Hospital's attorney in directing his motion in limine to the doctor's testimony that he was doing so because he had anticipated appellees' intention to rely on Dr. Hegde's alleged negligence in failing to obtain the informed consent of Mrs. Evans, as well as that of Ray Johnson. Accordingly, if there was any error in the trial court's ruling on the motion in limine or in its denying a directed verdict on this issue, it was harmless error to the extent that the Hospital was neither surprised nor received insufficient notice of this issue to prepare its defense.
Thus, we may reach the issue raised under point IV to the effect that the trial court erred in failing to direct a verdict in favor of the Hospital where the evidence was insufficient to support and sustain a claim against Dr. Hegde for his alleged failure to obtain the informed consent of Mrs. Evans. We agree with the Hospital that the trial court erred in that regard since there was no testimony from any qualified medical expert regarding the standard of care of a similar prudent health care provider in informing patients of the specific risks entailed by the test performed in the instant case. As was observed by the Fifth District Court of Appeal in Ritz v. Florida Patient's Compensation Fund, 436 So.2d 987 (Fla. 5th DCA 1983),
... in order to submit to a jury the issue of whether and to what extent specific risks of surgery should be disclosed to a patient in securing the patient's informed consent to the procedure, evidence is required as to the nature and extent of the risks and of the standard prevailing in the medical community, i.e., whether a *812 reasonable medical practitioner in the community would make such disclosure under the same or similar circumstances... .
If the plaintiff relies on the absence of informed consent, it is incumbent on plaintiff to provide evidence on the nature of the risks and the reasonable medical standard of disclosure. Without such evidence the jury can only speculate on the existence and extent of possible risks, on alternative methods of treatment and on possible complications.
It is not sufficient to say, with the 20/20 vision of hindsight, that had the consenting person known that a result which does occur could have occurred, no consent would have been given. That is not the test even in those few states which do not require expert testimony on the nature of the risks and the medical standard of disclosure. We would expect no less of a plaintiff alleging malpractice, than to say that if he had known what was going to happen, he would not have consented.
Id. at 990, 992-993. See also Sims v. Helms, 345 So.2d 721 (Fla. 1977).
In response, appellees rely on Dr. Hegde's testimony that it was his custom and practice, and/or standard operating procedure, to obtain the informed consent of the patient prior to performing the test. However, he also stated that he was aware of many other radiologists who did not obtain the patient's informed consent for the procedure in question. In any event, Dr. Hegde's testimony as to what he usually does "is merely some evidence of the standard of care" and is admissible for that limited purpose, Nesbitt v. Community Health of South Dade, Inc., 467 So.2d 711, 715 (Fla. 3d DCA 1985), but "[t]he fact that a person deviates from or conforms to an accepted custom or practice does not establish conclusively that the person was or was not negligent." Id. at 714. As the court observed in Nesbitt:
Customary methods or conduct do not furnish a test which is conclusive or controlling on the question of negligence, or fix a standard by which negligence is to be gauged. The standard of due care is such care as a prudent person would exercise under the circumstances of the particular case, and conformity to customary or usual conduct or methods cannot amount to more than a circumstance to be considered together with other circumstances of the case in determining whether due care has been exercised.
Id. See also Steinberg v. Lomenick, 531 So.2d 199 (Fla. 3d DCA 1988) (holding that a plaintiff is not entitled to an "evidence-of-negligence instruction" where the defendant violates its own rules of conduct; rather, such rules made by a defendant to govern the conduct of employees are relevant evidence of the standard of care but the jury receiving such evidence must be cautioned that the existence of an internal rule does not itself fix the standard of care).
In this regard, we distinguish the case of Florida Patient's Compensation Fund v. Tillman, 453 So.2d 1376 (Fla. 4th DCA 1984), cited by appellees for the proposition that insofar as it was Dr. Hegde's standard operating procedure to obtain the informed consent of his patients, no expert testimony establishing the standard of care of a similar health care provider was required. In so arguing, appellees' focus on Dr. Hegde's use of the term "standard operating procedure," comparing it to the language used in the cases cited by the Hospital regarding customary methods or conduct. However, the thrust of the decision in Tillman does not regard the semantic differences between the phrases "standard operating procedure" and "customary methods or conduct" but rather is directed toward the fact that the hospital's failure in that case to check, according to its standard operating procedure, the components of a prosthesis used in an operation amounted to "an obvious breach of duty which would be apparent to persons of common knowledge," i.e., the jury. Id. at 1381 (emphasis in original).
To the contrary, we agree with the Hospital that the instant action involves no such obvious breach of duty. The previously cited cases show Florida courts have consistently held that issues of informed consent are such that lay persons cannot *813 determine through the use of their common knowledge that a breach of the standard of care occurred. As stated in Public Health Trust of Dade County v. Valcin, 507 So.2d 596 (Fla. 1987), a plaintiff is "required to establish through expert testimony the information which should have been conveyed ... under the circumstances." Id. at 598.
Thus, on the basis that appellees presented no testimony from a qualified medical expert regarding the reasonable medical standard of disclosure under the circumstances, we hold the trial court erred in failing to grant the Hospital's motion for directed verdict. Accordingly, we reverse the final judgment and remand with directions for entry of a final judgment in favor of appellant.
WENTWORTH and THOMPSON, JJ., concur.