780 So.2d 205 (2001)
Robin D. Williams MOYER, etc., Appellant,
v.
Cheryl REYNOLDS, M.D., et al., Appellees.
No. 5D00-227.
District Court of Appeal of Florida, Fifth District.
February 2, 2001.
Rehearing Denied March 2, 2001.
*206 J. Scott Murphy and W. Riley Allen of W. Riley Allen, P.A., Maitland, for Appellant.
Betsy E. Gallagher and Dorothy C. Venable of Gallagher & Howard, P.A., Tampa, for Appellees.
SAWAYA, J.
Robin Moyer, as personal representative of the estate of Geraldine Williams, instituted a wrongful death action based on medical malpractice. She appeals the final judgment rendered pursuant to a jury verdict in favor of appellees Cheryl Reynolds, M.D. and Florida Emergency Physicians Kang & Associates, M.D., P.A. (collectively "Dr. Reynolds"). Moyer contends that the trial court erred (1) in striking testimony of Dr. Sonia Slysh where appropriate objections were not made and (2) in excluding Dr. Slysh's testimony regarding the internal policies and procedures of Florida Hospital.[1] We reverse.
Geraldine Williams, a thirty-three-year-old mother of two young children, was admitted to the emergency room at Florida Hospital complaining of chest pains, shortness of breath, and radiating pain down her left arm. She was attended by Dr. Reynolds, the emergency room physician, who ordered a chest x-ray and an EKG. A computer reading of the EKG revealed an abnormally "high QRS voltage,? Normal for age." The high QRS reading refers to the posterior of the heart. Dr. Sonia Slysh, a board-certified cardiologist, reviewed the EKG as part of her duties as a member of the EKG panel at Florida Hospital. Members of the EKG panel review every EKG because of the high incidence of abnormalities that the computer fails to identify.
Dr. Reynolds ultimately diagnosed the decedent as suffering from hyperventilation and discharged her. A few hours later, Geraldine was discovered by her mother who summoned emergency rescue because Geraldine was not breathing. Geraldine was transported back to Florida Hospital where the doctors were unable to revive her. An autopsy later revealed that Geraldine suffered an infarction in the posterior of the heart. The emergency room records from Geraldine's first visit showed that Dr. Reynolds had noted shortness of breath, question for midsternal chest pain, near syncopal episode, history of smoking, and numbness in arms and legs. Additionally, the hospital records showed that Geraldine had a number of risk factors related to heart disease, including elevated triglycerides, elevated cholesterol, a history of smoking, and obesity.
After suit was filed, both parties identified Dr. Slysh as a witness and both subpoenaed her. However, because of serious injuries she suffered in an automobile accident, Dr. Slysh was unable to physically attend the trial. During the trial, Moyer filed a motion to permit Dr. Slysh to testify at trial by video conference. However, the trial court advised the parties that the court did not have the capability to present testimony through video-conferencing so the parties agreed to vidoetape Dr. Slysh's testimony for presentation to the jury. During the videotaping, the only objections made by Dr. Reynolds' attorney to the *207 testimony were to the form of the question.
The trial court subsequently held a hearing to determine the admissibility of Dr. Slysh's taped testimony. In addition to hearing Dr. Reynolds' objections to form made during the videotaping, the trial court allowed Dr. Reynolds to argue objections to the admissibility of the testimony that were not made at the time the testimony was elicited. The court sustained some of those objections and struck portions of Dr. Slysh's testimony.[2] Before the redacted videotape of Dr. Slysh's testimony was presented to the jury, Moyer objected to the trial court's striking portions of the testimony based upon the "form" objections and the objections made at the hearing that were not made at the time the testimony was elicited. Moyer argued that during the taping, she relied upon the court's ruling that the taping was to proceed as if at trial and, therefore, when Dr. Reynolds made the "form" objections, she believed that they were of no consequence and thus did not respond to them. Moyer further argued that if Dr. Reynolds' attorney had properly stated the basis of the objections, Moyer's counsel would have had the opportunity to cure the objection by modifying the questions. The trial court overruled Moyer's objections.
Just as Moyer contends, the record reveals that the trial court and counsel for both parties knew that the videotaped testimony of Dr. Slysh was trial testimony. Therefore, any objections should have been made at the time the question was asked and the grounds therefor should have been specifically stated. See § 90.104(1), Fla. Stat. (1999); Hoffman v. Jackson's Minit Mkts., Inc., 327 So.2d 48 (Fla. 4th DCA 1976); Nat Harrison Assocs., Inc. v. Byrd, 256 So.2d 50 (Fla. 4th DCA 1971). Moyer further argues that Dr. Reynolds waived any objection not specifically made at the time the testimony was elicited. Although we agree with Moyer's argument, we conclude that even if proper objections had been made, the trial court erred in not allowing the testimony *208 regarding breach of the hospital's policy and procedures. We note that the trial judge finally realized that he had made an error in striking much of Dr. Slysh's testimony, but thought that he was powerless to correct the error given the fact that an appeal had already been filed.[3]
The provisions of section 766.102, Florida Statutes (1995) that require the claimant in a medical malpractice action to establish the standard of care by expert testimony does not preclude the introduction of other evidence. As in negligence cases in general,[4] the courts permit a claimant in a medical malpractice action to establish that the health care provider breached his or her own rule of practice or violated an industry standard as evidence of the standard of care. See Gerber v. Iyengar, 725 So.2d 1181 (Fla. 3d DCA 1998); Nesbitt v. Community Health of South Dade, Inc., 467 So.2d 711, 715 (Fla. 3d DCA 1985) ("Because what is usually done is merely some evidence of the standard of care, it is admissible for that limited purpose. Its admission, however, must be qualified by a cautionary instruction to the jury that the evidence does not by itself establish a standard of care.") (citation omitted); Doctors Mem'l Hosp., Inc. v. Evans, 543 So.2d 809 (Fla. 1st DCA 1989); Marks v. Mandel, 477 So.2d 1036, 1039 (Fla. 3d DCA 1985) ("Courts have held repeatedly that these internal manuals should be admitted when they contain either 1) evidence of a general industry custom or standard, or 2) evidence that the defendant violated its own policy or an industry standard.") (citation omitted). Although this type of evidence does not conclusively establish the standard of care, it is admissible as some evidence of the standard of care and the jury should be so instructed. Nesbitt; Doctors Mem'l Hosp.
We conclude that Dr. Slysh's testimony regarding the hospital's policy and procedure for the emergency room was relevant as some evidence of the standard of care and the error in striking this testimony constitutes harmful error requiring reversal. Had the policy and procedure been followed, there was evidence that a cardiologist would have been called in and Geraldine would have been admitted to the hospital and treated for her heart condition. In other words, there was evidence that had Dr. Reynolds complied with the policy in effect at the time of the incident, Dr. Reynolds would have consulted with *209 the on-call cardiologist and Geraldine could have survived the heart attack.
Dr. Reynolds argues that the exclusion of the evidence was not prejudicial because most of it was cumulative to other evidence presented at trial, citing Sims v. Brown, 574 So.2d 131 (Fla.1991) and Nicholson v. Hospital Corp. of America, 725 So.2d 1264 (Fla. 4th DCA 1999). Our review of the record reveals that the testimony was not cumulative. Thus the cases relied on by Dr. Reynolds are distinguishable from the instant case. In Nicholson, two other experts testified to essentially the same specific opinion as the excluded opinion. In Sims, the court noted that the excluded testimony dealt with an topic that was "not really an issue" and that there was "plenty of other evidence to this effect." Sims, 574 So.2d at 134-35. Neither situation exists in the instant case. Dr. Slysh was one of Moyer's most important witnesses. She provided the sole testimony for Moyer on Florida Hospital's policy and procedures and without her testimony, all the jury heard was Dr. Reynolds' partner's testimony that no policy existed.
We find the instant case more analagous to our decision in Lake v. Clark, 533 So.2d 797 (Fla. 5th DCA 1988), wherein this court stated:
In the deposition Abramson said the standard of care was breached by both the physician and the hospital; his testimony was critical to the plaintiff's case. The fact that it was corroborative of other testimony, or even cumulative to it, does not matter. A medical malpractice case is always necessarily a battle of expert witnesses. Within only very broad limits all qualified opinion testimony should be allowed; that is, not disallowed because it is cumulative to other evidence.
Id. at 799-800; see also Cenatus v. Naples Cmty. Hosp., Inc., 689 So.2d 302 (Fla. 2d DCA 1997) (holding it reversible error to exclude doctor's testimony even though other expert testimony was offered on the same topic where it was clear from the record that the doctor was intended to be the primary expert on behalf of the plaintiff).
Having concluded that it was harmful error to strike Dr. Slysh's testimony relating Florida Hospital's policy and procedures, we reverse the judgment entered in favor of Dr. Reynolds and remand this case to the trial court for a new trial.
REVERSED and REMANDED.
SHARP, W. and GRIFFIN, JJ., concur.
NOTES
[1] Moyer raises a third issue contending that the trial court erred in determining that D. Slysh was precluded from testifying as to the standard of care applicable to Dr. Reynolds. It is not necessary for us to address this issue because we reverse and remand this case for a new trial based on the other issues raised by Moyer.
[2] Summarized, the stricken direct examination testimony is as follows:

1. The standard medical practice at Florida Hospital in 1996 was for the E.R. doctor to contact the on-call cardiologist if the computer identified an abnormality such as "high QRS voltage,? normal for age."
2. The on-call cardiologist, available to the E.R. department 24 hours per day, was to come in immediately to evaluate the patient.
3. The name and phone number and pager number of the on-call cardiologist was on the bulletin board in the E.R.
4. The "high QRS voltage" was a tip-off that the E.R. doctor should look even more closely at the EKG for more abnormalities. If the computer picks up one or two abnormalities, it is likely that there are more that it may have missed.
5. The E.R. doctor should have consulted with the on-call cardiologist in light of the EKG reading.
6. With her over-read of the EKG, Dr. Slysh would have assumed that the patient was immediately admitted to the cardiac intensive care unit and would have assumed that the cardiologist on call for the E.R. would have been called immediately to see and treat the patient for an ongoing heart attack, "because that is the standard routine medical practice."
7. Serial enzyme studies should have been performed to gain information on whether the patient was having an ongoing heart attack, as indicated by the EKG; and serial EKGs should have been done on the patient.
8. In light of the factors present, including Geraldines' medical and physical history, the factors were risk factors for heart disease. Each factor on its own was a risk factor: smoking, cholesterol, triglycerides, chest discomfort, shortness of breath, the near syncope. Putting all the factors together in one person is an extremely high indication that the patient is having major heart disease.
9. The patient presenting with those factors should absolutely not have been discharged.
10. It was a deviation from the standard practice at Florida Hospital in 1996 for the E.R. doctor to fail to call in the on-call cardiologist.
11. It was a deviation from the standard practice at Florida Hospital in 1996 for the E.R. doctor to discharge Williams in light of the EKG abnormalities.
[3] When the trial judge entered his order denying Moyer's motion for new trial, he erroneously stated that he had set limits on Dr. Slysh's testimony which justified his striking parts of her testimony. In fact, the trial court had never made any rulings limiting the testimony that could be elicited from Dr. Slysh. Because of the misstatement in the order, Moyer moved the court for clarification and/or for relief from judgment. At the hearing on Moyer's motion, the trial judge admitted if he did not enter an order restricting the way the deposition was to be taken or limiting the deposition, then he "made a critical error" when he struck Dr. Slysh's testimony based on improper form objections. He also admitted that he did not know how to correct the critical error, believing he had lost jurisdiction to grant a new trial:

I think the only thing that the Plaintiff has left is to see if the appellate court would agree that it was a critical error, reverse me, and I'm not suggesting that they should not reverse me; I'm suggesting that I am finding it is a critical error and they should send it back.
[4] See e.g., Clements v. Boca Aviation, Inc., 444 So.2d 597 (Fla. 4th DCA 1984) ("We believe the trial court erred in excluding interrogatories and answers thereto as to the policy of Boca Aviation, Inc. to require certain minimum flying experience on the part of persons renting its aircraft. Because there is evidence that this policy was violated and that the violation may have had some causal connection to the accident in question, we cannot conclude that the error was harmless.") (citation omitted); Nance v. Winn Dixie Stores, Inc., 436 So.2d 1075, 1077 (Fla. 3d DCA 1983) (holding that "appellee's safety manual, with its repeated warnings about the hazards and consequences of debris left on the floor, should be allowed in evidence for the purpose of showing notice and foreseeability. The jury should decide whether the manual constitutes some indication of the care required under the circumstances....").