PALMER, J.
Carmen Castillo appeals the final judgment entered by the trial court after a jury rendered a verdict against her on her claim of medical malpractice. We affirm.
Carmen Castillo, in her capacity as the personal representative of her husband Eddie’s estate, filed suit against Dr. Jeffrey Bush, a radiologist, alleging medical malpractice, claiming that Dr. Bush’s improper interpretation of a CT scan led to Mr. Castillo’s death. Castillo subsequently amended her complaint to assert a cause of action for vicarious liability against the radiology group which employed Bush, alleging that Dr. Bush’s partner, Dr. Hines, had also been negligent in reading Castillo’s CT scan.
The evidence adduced at trial demonstrated that Mr. Castillo visited a hospital emergency room on a Sunday morning complaining of severe abdominal pain. The emergency room physician examined Mr. Castillo and ordered a series of tests, including a CT scan. Dr. Bush read the CT scan and reported “no acute abnormalities”. The emergency room physician prescribed pain medication and sent Mr.' Castillo home with instructions that if his condition were to worsen, such as if he began vomiting, then he should return to the hospital. After arriving home, Mr. Castillo’s condition did worsen in terms of pain, and he began vomiting. However, instead of returning to the hospital, he contacted his primary care physician. By Tuesday morning, Mr. Castillo was in severe distress and called for an ambulance to take him to the hospital. Soon thereafter, he suffered a heart attack and died, allegedly due to complications from his abdominal condition.
In asserting a claim of medical negligence, Mrs. Castillo claimed that Dr. Bush’s improper reading of the CT scan lead to her husband’s death. She also alleged that Dr. Bush was vicariously liable for the negligence of Dr. Hines, who reviewed the CT scan on the day following Castillo’s visit - to the hospital. In response, Dr. Bush primarily alleged that Mr. Castillo’s refusal to comply with the emergency room physician’s instructions to return to the hospital if he began vomiting led to his death. In the alternative, Dr. Bush argued that several other physicians, none of whom were party defendants in the instant lawsuit (including the emergency room physician and the Castillos’ primary care physician) were responsible for causing Mr. Castillo’s death.
Following a six-day trial, the jury returned a verdict finding that there was no negligence on the part of Dr. Bush or Dr. Hines which was a legal cause of Mr. Castillo’s death. The trial court denied Castillo’s motion for new trial and entered a final judgment on the jury’s verdict. This appeal and cross-appeal timely followed.
Castillo argues that this case involves multiple instances of improper conduct on the part of defense counsel which precluded her from receiving a fair trial and, therefore, the trial court erred in denying her post-trial request for new .trial.
A motion for new trial is addressed to the sound discretion of the trial court and a ruling thereon will not be disturbed absent a clear showing of abuse of discretion. Cloud v. Fallis, 110 So.2d 669 (Fla.1959). If reasonable men could differ as to the propriety of the action *320 taken by the trial court, then there is no abuse of discretion. Ford Motor Co. v. Kikis, 401 So.2d 1341 (Fla.1981).
In asserting her claim for appellate relief, Castillo first argues that the trial court should have granted her a new trial because she was unduly prejudiced by comments made by defense counsel during his closing argument. More specifically, Castillo contends that defense counsel made two improper “trust me” statements which mandate the grant of a new trial. The record reveals that when the first “trust me” statement was made, no objection was raised to the statement. When the second “trust me” statement was made, counsel for Castillo objected, defense counsel apologized, and the court sustained the objection. No motion to strike or motion for mistrial was made.
In her post-trial motion for new trial, Castillo argued that defense counsel’s “trust me” comments constituted reversible error. The trial court rejected this argument, stating: “[T]he Court finds that there was no reasonable likelihood in the overall context that defense counsel’s isolated ‘trust me’ statement, which was sustained on objection, deprived Plaintiff of a fair trial.”
In reviewing this claim, we note that, “[generally, a mistrial or new trial should be granted only when counsel’s [closing] arguments are so inflammatory and prejudicial that they deny the opposing party a fair trial.” Maksad v. Kaskel, 832 So.2d 788 (Fla. 4th DCA 2002)(eiting to Jeep Corp. v. Walker, 528 So.2d 1203 1204 (Fla. 4th DCA 1988)). On the face of the instant record, there is no indication that the trial court abused its discretion in denying Castillo’s request for a new trial based upon the “trust me” comments.
Castillo next argues that the trial court should have granted her a new trial because, during his closing argument, defense counsel violated the terms of the parties’ pre-trial stipulation.
The defendants filed a pre-trial motion in limine regarding “hypothetical questions.” In the motion, the defendants requested that the trial court enter an order preventing Castillo from questioning the emergency room physician, Dr. Newcomer, as to “what he would have done had he received information other than the information provided to him by Dr. Bush”. After much discussion, the parties agreed that they would not question Dr. Newcomer as to whether he would have done anything different had he received different information from Dr. Bush concerning Mr. Castillo’s CT scan.
Thereafter, during his closing argument, when discussing Castillo’s theory of the case, defense counsel made the following statement:
Is [Castillo’s theory of the case] that had Dr. Bush reported the information found on Dr. Hines’ variance report the next morning, the information that has the handwritten question mark, small bowel mass, or inflammation versus adhesion, had Dr. Bush put that on his urgent fax typed report that somehow the outcome would have been different, that somehow that would set the wheels in motion differently? Well, Dr. Newcomer didn’t testify to that.
Counsel for Castillo immediately objected and moved for mistrial, arguing that defense counsel’s statements were in violation of the parties’ pre-trial stipulation. The court sustained the objection and ordered the jury to disregard the comment. Defense counsel continued:
There was no evidence from any expert in this case, whether it be Dr. Brown, whether it be Dr. Dineen, that anybody in the emergency room — Dr. Newcom *321 er — would have done something different had different information been provided to him.
Counsel for Castillo objected again, but the objection was overruled.
In her post-trial motion, Castillo moved for a new trial, arguing that it was reversible error for defense counsel to violate the terms of the parties’ pre-trial stipulation. The trial court rejected this argument, ruling:
After reviewing the closing argument in context, the Court agrees with the Defendants that the comments were not improper or in violation of the stipulation or in limine ruling. Defendant was arguing to the jury the lack of evidence showing proximate cause, i.e., that there was a lack of evidence showing that more likely than not the death would not have occurred if Defendant Bush would have included certain information on his report. ■ Further, the Court sustained the objection to some of the comments and instructed the jury to disregard them, and the Court overruled the objections to other comments.
We affirm this ruling because (1) Castillo’s objection to the first comment was properly sustained and the jury was directed to disregard same; and, (2) Castillo’s objection to the second comment was properly overruled because the question did not speak to Dr. Newcomer’s testimony, and therefore did not implicate the terms of the parties’ pre-trial stipulation, but rather, the question spoke to the lack of expert testimony indicating any causal connection between Dr. Bush’s reading of Mr. Castillo’s CT scan and the decision making process undertaken during his stay in the emergency room.
Castillo next argues that the trial court should have granted her a new trial because, during his cross-examination of her expert witness, Dr. Dineen, defense counsel repeatedly submitted improper questions concerning (1) his opinion regarding the alleged negligence of the Cas-tillos, and (2) his opinion of the emergency room physician’s standard of care.
During a pre-trial hearing, counsel for Castillo requested a ruling that defense experts be prohibited from providing opinion testimony concerning the negligence of the Castillos regarding their failure to follow the emergency room physician’s discharge instructions. Defense counsel responded that he should be able to ask the experts whether the Castillos’ actions impacted “the ultimate cause of the outcome”, arguing that the questioning would speak to the issue of causation. Counsel for Castillo" agreed: “I agree with that. Causation, I think that’s fair game. That’s a separate issue.” The court responded:
What we don’t want is an expert saying, in my opinion, the plaintiffs were comparatively — or were negligent.... Negligent by failing to do this or that. He can say what impact you know, if he knows factually they did not respond to that and come back and that had an impact on the medical outcome or medical condition, that’s medical testimony.
Thereafter, at trial, when Dr. Dineen was called as an expert witness during Castillo’s case-in-chief, the trial court cautioned the parties that Dr. Dineen was only permitted to offer opinion/standard of care testimony in the area he was qualified as being an expert witness; namely, surgery, and that he could not submit standard of care opinion testimony regarding emergency room, treatment. The parties agreed.
Dr. Dineen explained to the jury that he was able to offer his opinion concerning whether Mr. Castillo was a candidate for surgery on the day he arrived at the hospital. He opined that although Castillo was *322 not a candidate for surgery on the Sunday he arrived at the hospital, by Monday, when his vomiting started, surgery was needed.
During the course of his cross-examination, defense counsel asked Dr. Dineen several questions couched in hypothetical terms. These questions formed the basis for Castillo’s repeated objections. For example, defense counsel queried:
So if we assume, as an example, that you have a patient who’s given a history of abdominal problems for a year and they’ve become significantly worse over the past week, and they’re in the emergency room all day long for nine hours in severe pain, they’ve got an extended abdomen, they’re dis — you know, their bowel is distended, it is tender, and that’s going on for nine straight hours, and at the time of discharge, that patient is begging the involved physician to hospitalize, would you, as a surgeon, say we should discharge that patient?
Counsel for Castillo immediately objected on the basis that it was an improper question outside the scope of Dr. Dineen’s expertise since it went to the standard of care of an emergency room physician. The court sustained the objection. Defense counsel then continued:
Have you ever had a patient, sir, that was in an emergency room and was being treated and you were called in and they were having significant pain and the CT scan was inconclusive or said no acute abnormality and you chose to take them to surgery regardless.
Counsel for Castillo again immediately objected and the court sustained same. Defense counsel then asked:
Okay. Now, in that context with the hypothetical patient that I mentioned that had ongoing pain for a year, got worse over the past week, you’re in the emergency room on a Sunday, you’re there for nine hours, and you have a x-ray report that shows loops of bowel, you have significant pain, ongoing in nature, you have the distended abdomen, and you have a CT scan that says no acute abnormality demonstrated and you have a patient who is still in significant pain at the time of discharge, would you feel that you should have been called in to see that patient regardless of the CT scan.
Counsel for Castillo again immediately objected and the court sustained same. Defense counsel continued:
Do you feel that a general-surgeon consult should have been requested by [the emergency room physician]?”
Counsel for Castillo again immediately objected and the court sustained same, stating
I just have to sustain that objection because it goes directly to the standard of care of the emergency-room physician, which he is not.
Defense counsel continued:
Would you [in your capacity as a surgeon] have liked to have seen [Mr. Castillo] given the information about his clinicál situation?
Counsel for Castillo again immediately objected and the court sustained. A bit later, defense counsel asked Dr. Dineen:
So, hypothetically, when you were looking at the CT scan interpreted by Dr. Bush, which said no acute abnormality, you agree with that in terms of a decision whether to take him to surgery or not?
Counsel for Castillo again immediately objected and the court sustained. Defense counsel then asked:
There was nothing about the CT-scan interpretation that you disagreed with from the viewpoint of a — hypothetically, *323 to take the man to surgery on Sunday is what I’m getting at?
Counsel for Castillo again immediately objected and the court sustained.
Defense counsel then moved on to question Dr. Dineen on the conduct of the Castillos. He asked: “Do you feel that Mr. Castillo should have come back to the emergency room the next morning?” The trial court sustained Castillo’s objection to this question. Defense counsel then reverted to questioning on the emergency room physician’s standard of care, asking: “Do you feel that Mr. Castillo should have been discharged?” Castillo’s timely objection was sustained.
In her motion for new trial, Castillo argued that the grant of a new trial was warranted because defense counsel had impermissibly pursued a line of questioning regarding standard of care opinion testimony from Dr. Dineen and had also improperly attempted to elicit testimony from Dr. Dineen regarding the conduct of the Castillos. The trial court rejected these claims. As for the standard of care line of questioning, the trial court held that
only five of the twelve objections [made during defense counsel’s cross-examination] were sustained due to the improper eliciting of emergency room standard of care. Further, Dr. Dineen never answered any of the sustained emergency room standard of care questions, nor did the sustained questions infer what Dr. Dineen’s opinions would be. In addition, counsel’s conduct during this line of questioning was not so ardent and persistent that it can be inferred that the jury was improperly influenced by the conduct in light of the Court’s rulings.
As for the questioning regarding the Cas-tillos’ conduct, the court ruled:
The Court finds that defense counsel’s line of questioning on this area did not result in prejudice that improperly influenced the jury.
On appeal, Castillo argues that she should have been granted a new trial because she was prejudiced by defense counsel’s questioning regarding Dr. Dineen’s opinion on the emergency room physician’s standard of care. She claims that “the questions and the overall tone of the examination clearly suggested answers, and clearly indicated the point being driven home by seasoned defense counsel, that being that [the emergency room physician], and not the defendants, was at fault.” Castillo further argues that the trial court erred in not granting her a new trial based on'defense counsel’s improper questioning of Dr. Dineen about the Castil-los’ alleged negligence, claiming that such questioning violated the court’s in limine ruling.
Although the questioning by defense counsel does appear to us to be an attempt to improperly get certain information before the jury in violation of the parties’ pre-trial agreement, we cannot- say that such conduct was so outrageous that the trial court abused its discretion in denying the motion for new trial on this basis since the line of questioning did not infer the answer to any of the proposed questions. In addition, on redirect, when asked .if Mr. Castillo’s failure to follow discharge instructions was a proximate cause of his death, Dr. Dineen answered “No.” Further on redirect Dr. Dineen stated that since he is not an emergency room physician he was not offering any opinion on the instant emergency room physician’s standard of care.
Castillo next argues that the cumulative effect of defense counsel’s prejudicial conduct requires us to grant her a new trial because his conduct created an atmosphere that tainted the case and resulted in Castillo not receiving a fair trial. We reject *324 this argument as meritless because the record demonstrates that the trial court was vigilant in ruling on all objections, and avoiding the imposition of any improper taint.
Castillo lastly argues that the trial court erred, as a matter of law, in denying her request to submit rebuttal evidence.
A trial court has broad discretion regarding the admissibility of rebuttal testimony. Griefer v. DiPietro, 708 So.2d 666 (Fla. 4th DCA 1998). However, our courts have ruled that a trial court abuses that discretion when it limits non-cumulative rebuttal that goes to the heart of the principal defense. Id.
At the close of the defendants’ case, Castillo sought permission from the court to admit deposition testimony of Dr. Styne. She claimed that such testimony was admissible to rebut the testimony submitted by Dr. Foley, the defense’s expert witness, who testified concerning his opinion as to Mr.- Castillo’s cause of death. Defense counsel objected, arguing that the evidence did not qualify as being rebuttal evidence, and therefore, it should have been submitted during Castillo’s case-in-chief. More specifically, defense counsel argued that since Dr. Foley’s testimony was not a surprise; that is, his testimony was consistent with the statements he made during his deposition, it was not subject to being rebutted. Upon review, the trial court denied Castillo’s request:
I think probably we don’t need — I think that the deposition and the trial testimony are close enough, that we can’t really say there’s an adequate distinction to need rebuttal testimony. I think [Dr. Foley] said that may be the cause of death, and that’s what he said at trial. It may have been postulated a little more, a bit more strenuously at the trial.
Thereafter, in her motion for new trial, Castillo argued that the trial court should have permitted her to introduce her rebuttal evidence. The trial court rejected this argument, stating:
Plaintiff asserts that it was error to preclude presentation of her rebuttal expert, Dr. Styne, who opined that adhe-sions were the most likely cause of the bowel ischemia and that the death was not coincidental as suggested by Dr. Foley’s opinion. The Court finds that the proffered portions of Dr. Styne’s deposition testimony involved an issue that was obviously a matter of Plaintiffs case-in-chief, i.e., an obstruction as the cause of the bowel ischemia and gangrene, which was brought out in Dr. Dineen’s direct examination. Further, Dr. Reeves, who performed the autopsy, testified that he found no evidence of a bowel obstruction or stricture from adhesions. Thus, this issue of what led to the bowel ischemia and gangrene was part of Plaintiffs case and Dr. Styne’s deposition testimony would be in rebuttal of nothing and cumulative to Dr. Dineen’s opinion testimony.
Castillo challenges this ruling, arguing that the court improperly found that the testimony was inadmissible because it was cumulative to opinion testimony offered in her case-in-chief, asserting that the ruling is contrary to the law in the Fifth District, citing to Lake v. Clark, 533 So.2d 797 (Fla. 5th DCA 1988) and Moyer v. Reynolds, 780 So.2d 205 (Fla. 5th DCA 2001). Our review of the record demonstrates that the trial court properly concluded that Dr. Styne’s testimony was cumulative to the evidence presented in Mrs. Castillo’s casein-chief, and thus, did not qualify as being proper rebuttal evidence. Furthermore, the rulings in Lake and Moyer are clearly distinguishable in that neither case involved the exclusion of rebuttal evidence *325 and thus a different standard for admission was applicable.
In light of our rulings herein, it is unnecessary to address the issues raised on cross-appeal.
AFFIRMED.
PETERSON and GRIFFIN, JJ., concur.