# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D22-1901
LT Case No. 2019-10377-CIDL
_____

DISCOUNT TIRE CO.,

    Appellant,

    v.

TAMMY BRADFORD, as Personal
Representative of the Estate of
MICHAEL BLAZE BRADFORD,
deceased; and as PERSONAL
REPRESENTATIVE of the ESTATE
of WARREN MICHAEL BRADFORD,
deceased,

    Appellee.

_____

On appeal from the Circuit Court for Volusia County.
Kathryn D. Weston, Judge.

Kenneth B. Bell and Lauren V. Purdy, of Gunster, Yoakley &
Stewart, P.A., Jacksonville, for Appellant.

Christopher V. Carlyle, of The Carlyle Appellate Law Firm,
Orlando, for Appellee.

November 3, 2023

EDWARDS, C.J.

This wrongful death case arose out of a single-vehicle crash that resulted from the failure of a fourteen-year-old tire. Plaintiff/Appellee, Tammy Bradford, as personal representative of the estates of her husband and their son, sued Defendant/Appellant Discount Tire Co., a retail tire sales and service store. Although Appellee claimed during the ensuing jury trial that Discount Tire breached certain industry standards, she failed to offer evidence to support her claim. The trial court properly granted Discount Tire's motion for directed verdict and entered judgment in its favor. However, the trial court subsequently granted Appellee's motion for new trial based on her argument that Discount Tire's alleged breach of its own internal policies was sufficient, by itself, to create a legal duty. It was error to grant a new trial because Florida law is clear that a defendant's internal policies, alone, do not create or define the duty owed to a plaintiff. Accordingly, for the reasons discussed in detail below, we reverse the order granting a new trial and remand for entry of final judgment in favor of Discount Tire.

## BACKGROUND FACTS

In February 2017, Michael Bradford, Appellee's husband, took his truck to Discount Tire where he purchased two new tires which were installed on the rear wheels while the older rear tires were rotated to the front. Four months later, while driving his truck on I-95 at highway speeds, Mr. Bradford's left front tire experienced a tread separation resulting in a loss of control that led to a crash in which Mr. Bradford and their son, Warren Bradford, were killed. In her complaint and at trial, Appellee asserted that the left front tire that failed was dangerous and likely to fail due to the fact that it was allegedly more than ten years old. She further asserted that Discount Tire was negligent for having serviced that older tire, i.e., rotating it to the front from the rear, and that "industry standards" called for taking tires of that age out of service. Appellee's tire engineer and failure analysis expert, David Southwell, testified that the fourteen-year-old tire failed because it was too old.

At trial, another of Appellee's experts testified—William Zembower, the proprietor of Zembower Auto, a single-store, family-owned business that engages in the repair and

2

maintenance of automobiles in Central Florida. He said that one industry, tire manufacturers, and a second industry, motor vehicle manufacturers, had determined that old tires, despite having adequate tread, may not be safe for use because of aged-related degradation that could lead to tread separations or other failures. Different tire manufacturers and vehicle manufacturers used varying definitions for what was an "old" tire, with some saying that a tire manufactured ten years earlier, and others stating that tires manufactured as recently as six years earlier, may not be safe based on age. Others shared no public information on age-related safety concerning tires.

According to Mr. Zembower, the tire manufacturing industry's standard and the vehicle manufacturing industry's standard called for those manufacturers to inform consumers that the age of a tire was important for safety, that old tires should not be used, but rather should be replaced.[1] Taken in the light most favorable to Appellee, that testimony from Mr. Zembower was evidence of the standards observed in two industries: tire manufacturing and vehicle manufacturing. However, it was not evidence of what, if any, standards existed concerning older tires in Discount Tire's industry, namely the retail tire service and sales industry.

Mr. Zembower did testify about Discount Tire's internal policy: employees at its stores were not to service any tire that was over ten years old. He admitted that he was not able to name any other tire retail sales and service providers that had adopted that policy, other than Discount Tire and Zembower's own single-shop business. Mr. Zembower admitted that retail tire sales and service stores, like Discount Tire, have the right to service tires at any age and that there are no regulations or mandates requiring replacement of tires at any age. On cross-examination, Mr.

---

[1] Appellee was not pursuing Discount Tire under any theory of failure to warn Mr. Bradford about the safety of old tires or the desirability of buying four rather than two tires for his truck. Discount Tire witnesses presented in Appellee's case testified that their store had several large signs or posters displaying information about the safety of older tires and its recommendation to replace all four tires on a vehicle at the same time.

Zembower agreed that Discount Tire's internal policy went above and beyond and was one step higher than other tire retailers.

Zembower did opine that Discount Tire violated its own extraordinary internal policy when it serviced the old tire on Mr. Bradford's truck by rotating it from the rear to the front axle. But he did not identify any existing standards in Discount Tire's industry regarding older tires that Appellant had violated in this case.

## DIRECTED VERDICT MOTION

At the close of Plaintiff/Appellee's case, Appellant moved for directed verdict. The court and counsel discussed the evidence presented with a focus on Mr. Zembower's testimony. Ultimately, the trial court granted the motion for directed verdict because no evidence was presented to prove what the relevant industry standard for retail tire sales and service providers was and more specifically because Appellee's expert, Zembower, agreed that Discount Tire's internal policies exceeded whatever the industry standard might have been. The trial court entered final judgment for Appellant.

## NEW TRIAL MOTION

Appellee filed a timely motion for new trial which was argued to the trial court. Appellee's counsel argued that Discount Tire had a duty, based on its internal policy, not to service the older tires on Mr. Bradford's truck. When the court asked if Discount Tire should have seized the older tires and refused to return them to Mr. Bradford, Appellee's counsel answered, "Absolutely."

Appellee asserted that this Court's decision in *Moyer v. Reynolds*, 780 So. 2d 205 (Fla. 5th DCA 2001), recognized that a defendant's internal policy, alone, could create and define a legal duty owed to the plaintiff and a breach of that internal policy, and that that alone presented a case that could go to the jury. Discount Tire's arguments to the contrary were unavailing. Ultimately, the trial court accepted Appellee's argument based on a misinterpretation of *Moyer* and granted Appellee's motion for new

4

trial.  Discount Tire timely appealed the order granting the new trial.

## STANDARD OF REVIEW

"An order granting a new trial is generally reviewed for an abuse of discretion." *Finkel v. Batista*, 202 So. 3d 913, 915 n.1 (Fla. 3d DCA 2016).  However, "appellate courts apply a de novo standard of review to a trial court's legal conclusions in an order granting a new trial." *Id.*  "[W]hen an appellate court has determined that a trial court's grant of a new trial is premised, at least in part, on an error of law, the inquiry then becomes whether the trial court would have granted a new trial but for the error of law." *Wal Mart Stores, Inc. v. Wittke*, 202 So. 3d 929, 930 (Fla. 2d DCA 2016) (quoting *Van v. Schmidt*, 122 So. 3d 243, 246 (Fla. 2013)).

## ANALYSIS

Florida Rule of Civil Procedure 1.530 grants the trial court discretion to order a new trial to any party on all or part of the issues.  Fla. R. Civ. P. 1.530(a).  When granting a new trial, the trial court "must state the specific grounds therefor."  Fla. R. Civ. P. 1.530(f). The appellate court is "dependent on the trial court to articulate [the] reasons supporting its order."  *Jordan v. Brown*, 855 So. 2d 231, 234 (Fla. 1st DCA 2003); *see also Jones v. Atkinson*, 974 So. 2d 573, 577 (Fla. 1st DCA 2008) ("We have previously expressed our reliance on trial judges to articulate the reasons for granting new trials so that we can intelligently review their orders, and we and other district courts of appeal have confined review of such orders to their stated reasons.").  Rule 1.530 also applies to motions for rehearing; the purpose of this rule "is to afford 'the trial court an opportunity to consider matters which it overlooked or failed to consider.'" *Howarth v. Lombardi*, 313 So. 3d 729, 731 (Fla. 2d DCA 2020).

Here, the order granting a new trial clearly articulated the trial court's reasoning.  It stated:

> Plaintiff's motion is hereby GRANTED based on this Court's reading of *Moyer v. Reynolds*, 780 So. 2d 205, 208

5

(Fla. 5th DCA 2001) and its acceptance of Plaintiff's argument that *Moyer* stands for the proposition that evidence a defendant failed to comply with its own internal rule or procedure is evidence of the standard of care and evidence of a breach of the standard of care; and is, therefore, sufficient to defeat a motion for directed verdict based on an argument that Plaintiff failed to offer evidence sufficient to establish the standard of care (duty) or a violation of the standard of care.

Thus, as explained above, this Court's review is limited to the trial court's legal interpretation of *Moyer*.

*Moyer*, a wrongful death action based on medical malpractice, dealt with the trial court's exclusion of portions of a doctor's testimony regarding internal policy procedures of a hospital. 780 So. 2d at 206. This Court explained that testimony relating to breach of the hospital's policy and procedures was admissible because, just "[a]s in negligence cases in general, the courts permit a claimant in a medical malpractice action to establish that the health care provider breached his or her own rule of practice or violated an industry standard as evidence of the standard of care." *Id.* at 208. Critically, *Moyer* stated that although this testimony was admissible as *some* evidence of the standard of care, "this type of evidence does not conclusively establish the standard of care." *Id.* Thus, *Moyer* does not hold that a plaintiff may establish standard of care solely through evidence that a defendant violated its own internal policy. A plain reading of *Moyer* supports the opposite—that while evidence of internal polices is relevant to the standard of care, it "does not conclusively establish the standard of care." *Id.*

*Moyer* is in accord with many other cases on this point, all of which point to the error in granting a new trial here. For example, in *Wittke*, "the trial court found that 'the evidence presented to the jury during trial clearly demonstrated that [plaintiff's] injuries were the result of [Wal Mart's] failure to follow its own safety policies and procedures.'" 202 So. 3d at 930. The Second District found that:

6

the trial court equated the standard of care with compliance with [the defendant's] internal policies and procedures, effectively determining that a breach of policies and procedures is a per se breach of the standard of care. This was error. '[A] party's internal rule does not itself fix the legal standard of care in a negligence action . . . .

*Id.*

*Dominguez v. Publix Super Markets, Inc.*, 187 So. 3d 892 (Fla. 3d DCA 2016), involved a slip and fall with what can only be described as remarkable timing. Assistant manager, Keith Nation, while standing in the soap aisle, heard a crash, ran to where a bottle of detergent had fallen on the same aisle, and did his best to straddle the spill. According to the store's video tape, he arrived in nine seconds from when the detergent fell. *Id.* at 893. Four seconds later, plaintiff came on scene, from Nation's blind side, where she slipped and fell on the just-spilled detergent. *Id.* Consistent with *Moyer*, the Third District held that "[t]he evidence relating to Publix's [internal operating] procedures about blocking the aisle was certainly admissible and relevant to the jury's consideration of Nation's conduct after the spill. However, internal safety policies do not themselves establish the standard of care owed to the plaintiff." *Id.* at 894–95 (citations omitted).

The Fourth District in *Gunlock v. Gill Hotels Co.*, 622 So. 2d 163 (Fla. 4th DCA 1993), first discussed the absence of case law that would support granting the motion for new trial here:

Furthermore, we can find no authority that evidence of an internal policy creates a substantive duty to conform to the standard of conduct contained therein. Therefore, appellants cannot properly demonstrate that the existence of appellee's internal policy created a substantive duty to escort intoxicated guests to their hotel rooms.

*Id.* at 164. Making the same point, but from the other end of the spectrum, in *De La Torre v. Flanigan's Enterprises, Inc.*, 187 So. 3d 330, 334 (Fla. 4th DCA 2016), the Fourth District noted that

7

"there is ample case law stating that internal policies do not create a duty to third parties."

The First District reached the same conclusion on internal policies in *Warren ex rel. Brassell v. K-Mart Corp.*, 765 So. 2d 235, 236–37 (Fla. 1st DCA 2000), where a minor was injured by a pellet gun powered by a $CO_2$ cartridge that was sold to the minor by the defendant. It affirmed the trial court's order dismissing the complaint alleging negligent entrustment where plaintiff argued that "sale of $CO_2$ cartridges to minors may have violated the K-Mart's internal policy"; reasoning that "[t]he standard of care however is set by the community, rather than by a corporation's internal policy." *Id.* at 237.

We would be remiss if we failed to mention *Pollock v. Florida Department of Highway Patrol*, 882 So. 2d 928, 936–37 (Fla. 2004), where our supreme court observed that:

> in the context of governmental tort litigation, written agency protocols, procedures, and manuals do not create an independent duty of care. While a written policy or manual may be instructive in determining whether the alleged tortfeasor acted negligently in fulfilling an independently established duty of care, it does not itself establish such a legal duty . . . .

## CONCLUSION

The fact that Discount Tire's internal policy called for it to refuse service if a customer did not wish to purchase a new tire to replace a ten-year-old tire is not—as the trial court ruled—evidence that Discount Tire violated the industry standard of care. Accordingly, we reverse the order granting Appellee a new trial and remand with instructions for the trial court to reinstate the original final judgment for Appellant, Discount Tire.

REVERSED and REMANDED with instructions.

WALLIS and MACIVER, JJ., concur.

8

————————————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

————————————————————