768 So.2d 1152 (2000)
Mary ELDER, individually, and as Parent and Natural Guardian of Ethan Elder, a minor, Appellant,
v.
Carmella FARULLA, M.D., individually; Carmella Farulla, M.D., as Agent and Servant of Vaicitis, Schorr & Richards, M.D., P.A., d/b/a Diagnostic Clinic; Christine J. Norton, as Personal Representative of the Estate of Frances Brendan Norton, M.D., Deceased; and Norton Medical Associates, P.A., Appellees.
No. 2D99-2770.
District Court of Appeal of Florida, Second District.
September 6, 2000.
Rehearing Denied October 18, 2000.
Kenneth W. Mastrilli of Personal Injury Law Center, Tampa, and Raymond T. Elligett, Jr., of Schropp, Buell & Elligett, P.A., Tampa, for Appellant.
Kenneth C. Deacon of Deacon & Moulds, P.A., St. Petersburg, for Christine J. Norton, as personal representative of the estate of Frances B. Norton and Norton Medical Associates, P.A.
Susan W. Fox and Brendan M. Lee of MacFarlane Ferguson & McMullen, Tampa, for Carmella Farulla, M.D., individually; and Carmella Farulla, M.D., as agent and servant of Vaicitis, Schorr & Richards M.D., P.A., d/b/a Diagnostic Clinic.
PARKER, Acting Chief Judge.
In this medical malpractice case, Mary Elder challenges the trial court's order granting a judgment notwithstanding the verdict and, in the alternative, a new trial following a jury verdict in Elder's favor. We reverse and remand for a new trial.
*1153 In January 1989 Elder sought treatment from Dr. Norton, her family physician, complaining of nausea over the past three days. Dr. Norton diagnosed an upper respiratory infection and prescribed medications. One month later, Elder sought treatment from Dr. Farulla, her gynecologist, and indicated that she had not had a menstrual period for two months and was having stomach pain. Dr. Farulla performed a pelvic exam, which she determined was normal. Dr. Farulla did not order a pregnancy test for Elder on that visit.
Elder returned to Dr. Norton in May 1989, complaining that her hands and feet were swollen, that she was gaining weight, and that her breasts had been leaking clear fluid for the past week. Dr. Norton prescribed medication to reduce the swelling and placed Elder on an unsupervised weight loss plan. Dr. Norton did not order a pregnancy test. One month later, Elder returned to Dr. Farulla, complaining that her hands and feet were swollen, that she was gaining weight, that her breasts were leaking clear fluid, and that she had not had a menstrual period since December. Dr. Farulla did not order a pregnancy test, but did order a pelvic sonogram. The sonogram revealed that Elder was seven months pregnant.
Elder immediately began seeing Dr. Robert Heller, an obstetrician/gynecologist. She had two visits with Dr. Heller before suffering a premature rupture of the membranes in the uterus. This premature rupture of membranes resulted in the premature birth of Elder's son, Ethan. Due to his premature birth and his required treatment thereafter, Ethan now suffers from severe to profound deafness and learning disabilities. Expert testimony established that Ethan could have avoided the disabilities from which he now suffers had he remained in utero for another three to four weeks.
Elder subsequently filed this action against Dr. Farulla, Dr. Norton, and Dr. Heller.[1] Elder alleged that Dr. Farulla and Dr. Norton were negligent in failing to timely diagnose her pregnancy. She alleged that this negligence resulted in her not getting prenatal care and that the lack of prenatal care caused the premature rupture of membranes and the premature delivery of Ethan. In the alternative, Elder alleged that Dr. Farulla and Dr. Norton were negligent in failing to diagnose Elder's uterine abnormality, called a bicornate uterus, and that this failure to diagnose and treat the abnormality caused or contributed to Elder's premature rupture of membranes and the resulting premature delivery of Ethan.
The case was originally set for trial during the week of January 10, 1994. In the order setting the case for trial, the trial court specifically limited each party to one expert per specialty. Dr. Farulla immediately challenged this portion of the court's order, alleging that the case was too complex for such a limitation and that she needed more than one expert per specialty to defend against the allegations. The trial court never ruled on this motion. The trial was rescheduled numerous times. Each order setting the case for trial contained the same limitation on experts, and Dr. Farulla moved each time to lift the limitation of one expert per specialty.
Ultimately, the case was set for trial during the week of January 11, 1999. In the uniform pretrial conference order, the trial court again included the limitation of one expert per specialty. At the pretrial conference held December 29, 1998, the defendants agreed to be limited to one expert per speciality, but then argued that each party should be limited to one standard of care witness and one causation witness regardless of medical specialty. Elder objected, noting that she was required to present opinions on standard of care and causation from "similar healthcare providers." Because Dr. Norton was a family practitioner and Dr. Farulla was *1154 an internist, Elder argued that she needed a different standard of care witness and causation witness for each of them. The trial court rejected Elder's argument and limited each party to one witness on standard of care and one witness on causation.
At a subsequent hearing on January 6, 1999, Elder again requested that she be allowed to present a standard of care witness and a causation witness for each defendant since they had different medical specialties. Elder's counsel sought to be allowed to have an expert witness in the field of family practice and an expert witness in the field of obstetrics and gynecology testify as to causation. While the trial court ultimately agreed that Elder was entitled to present a standard of care witness for each defendant because of their different medical specialities, the trial court refused to permit Elder to present a causation witness for each defendant. Thus, each of the two defendants was allowed to present a causation witness while Elder was allowed only one causation witness to testify against both defendants.
At trial,[2] Elder elicited evidence establishing that Dr. Norton and Dr. Farulla were negligent in failing to timely diagnose her pregnancy. This negligence included not considering that Elder might be pregnant, failing to order pregnancy tests, and, in Dr. Norton's case, prescribing medications and placing Elder on an unsupervised weight reduction program. Elder's evidence also established that her premature rupture of membranes caused Ethan's premature birth and that Ethan's premature birth caused his physical injuries.
Elder's sole causation witness, Dr. Wade, testified to two alternate grounds upon which the jury could find that the defendants' negligence caused the premature rupture of membranesthe lack of prenatal care and the undiagnosed and untreated bicornate uterus. Dr. Wade testified that Elder's pregnancy was high-risk, in part because her doctors failed to diagnose it and in part because of her bicornate uterus. He testified that Elder's premature rupture of membranes was due to some combination of the lack of prenatal care, the bicornate uterus, stress, and inflammation. However, Dr. Wade could not testify with certainty as to what caused Elder's premature rupture of membranes, and he admitted that up to eighty percent of all premature ruptures are unexplained.
During the defendants' case-in-chief, each of their two causation witnesses testified that the cause of Elder's premature rupture of membranes could not be determined. The defendants also called Dr. Heller to testify during their case-in-chief. The trial court allowed the defendants to elicit testimony from Dr. Heller concerning the cause of Elder's premature rupture of membranes. Dr. Heller testified that the cause of the premature rupture was unexplained. The next day, pursuant to an agreement between the parties, the trial court instructed the jury to disregard Heller's testimony concerning the cause of Elder's premature rupture of membranes. However, the trial court allowed the jury to consider Heller's testimony that the lack of prenatal care did not affect Ethan.
In her rebuttal case, Elder sought to introduce the testimony of Dr. O'Neill, her family practice standard of care witness, concerning the cause of the premature rupture of membranes and whether the lack of prenatal care affected Ethan. In keeping with its pretrial ruling, the trial court refused to allow this testimony.
Following a jury verdict in favor of Elder, the trial court granted the defendants' motion for a judgment notwithstanding the verdict. The trial court found that Elder's evidence on causation was insufficient to establish that the defendants' negligence caused Elder's premature rupture of membranes. Elder timely appealed the trial court's ruling.
*1155 We agree with the trial court that Dr. Wade's testimony, standing alone, was insufficient to prove causation. In Gooding v. University Hospital Building, Inc., 445 So.2d 1015, 1018 (Fla.1984), the Florida Supreme Court held that a plaintiff in a medical malpractice action must prove that the defendant's negligence "more likely than not" caused the plaintiff's injury. The mere possibility of causation is not enough. Id. The reason for this seemingly harsh requirement in medical malpractice cases was addressed by the court:
Relaxing the causation requirement might correct a perceived unfairness to some plaintiffs who could prove the possibility that the medical malpractice caused an injury but could not prove the probability of causation, but at the same time could create an injustice.... No other professional malpractice defendant carries this burden of liability without the requirement that plaintiff prove the alleged negligence probably rather than possibly caused the injury.
Id. at 1019-20. In this case, Dr. Wade's testimony establishes the possibility of causation, but not the probability. Under Gooding, this testimony is insufficient as a matter of law to establish causation. Therefore, we agree with the trial court that Elder's case should not have gone to the jury.
Despite this failure of proof, we are remanding this case for a new trial because we conclude that the trial court abused its discretion in limiting Elder to one causation witness while allowing the defendants two causation witnesses. We recognize that the trial court has broad discretion to determine the number of witnesses to be called by either party. See Edenfield v. Crisp, 186 So.2d 545, 549 (Fla. 2d DCA 1966); Fla. R. Civ. P. 1.200(b). However, in this case, Elder should have been permitted a number of causation witnesses equal to the number granted to the defendants, particularly since the defendants practiced in different medical specialties. See Lake v. Clark, 533 So.2d 797 (Fla. 5th DCA 1988) (noting that medical malpractice cases are necessarily a battle of experts and holding that all qualified opinion testimony should be allowed within very broad limits). When the trial court granted Elder's request to have standard of care witnesses who were "similar healthcare providers," it should have granted this same request as it applied to causation witnesses. Therefore, on remand, Elder must be permitted to have one causation witness per defendant.
We recognize that this resolution may appear to give Elder a second bite at the apple; however, we do not believe that to be the case under these circumstances. This is not a situation in which the plaintiff did not come to court prepared to prove her case. Rather, this is a situation in which the trial court's pretrial ruling unfairly limited the plaintiff's ability to present her case. Elder must be given a fair opportunity to present her case. However, if on remand Elder cannot produce a causation witness whose testimony, either alone or in combination with that of Dr. Wade, satisfies the requirements of Gooding, the defendants will be entitled to a directed verdict.
Reversed and remanded.
NORTHCUTT, J., and HAYES, HUGH D., Associate Judge, Concur.
NOTES
[1] Following discovery, the trial court granted summary judgment in favor of Dr. Heller.
[2] Trial began on January 12, 1999; however, the trial court declared a mistrial following the first day of testimony. The trial was rescheduled for February 9, 1999, and the case was tried to a verdict at that time.