LEVINE, J.
 

 These consolidated appeals and cross-appeal in this medical malpractice action present several issues regarding the patient’s introduction of two witnesses and evidence of the surgeon’s medical privileges, as well the closing argument by patient’s counsel. Specifically, appellants raise on appeal the following for consideration: whether the trial court improperly allowed the expert opinion of the patient’s treating physician; whether the trial court improperly allowed the testimony of a “surprise” witness; whether the trial court erred in requiring the admission of the delineation of the surgeon’s medical privileges; and whether the patient’s closing arguments were improper. We find that none of these issues require reversal, and therefore we affirm the judgment.
 

 In 1997, Dr. Philippon (the “surgeon”), an orthopedic surgeon at Holy Cross Hospital (the “hospital”), performed a hip ar-throscopy on seventeen-year-old Katie Shreffler (the “patient”) to repair a labral tear. When the patient did not recover from the surgery within the projected time, she requested a surgical report from the hospital and went to other doctors. In 1998, Dr. McCarthy, a hip arthroscopist, performed a debridement to remove the tissue that could not heal, but the patient continued to experience pain and limited mobility.
 

 In 1999, the patient filed a complaint against the surgeon and the hospital asserting claims of medical negligence and vicarious liability for negligently granting the surgeon privileges. The patient subsequently filed an amended complaint adding the manufacturer of the surgical instruments, Smith & Nephew, as a defendant and asserting a claim of products liability. After a trial, the jury found for the patient and returned a verdict finding she sustained $2.15 million in damages, assigning liability of 43% to the surgeon, 57% to the hospital and 0% to the manufacturer. This consolidated appeal follows.
 

 Although a pretrial order limited the parties to one expert per specialty, the court permitted the patient to offer the testimony of her treating physician, Dr. Michael Tidwell. According to Tidwell, the patient’s recurrent pain suggested a failed surgery. Tidwell observed that the patient had gouges in her cartilage caused by a sharp instrument. He reasoned that the gouges were inflicted by the surgeon because he was the only person who had been in the hip joint before Dr. McCarthy. Tidwell opined that, within a reasonable degree of medical probability, the injuries were caused by the surgeon’s procedure and that the injury to the joint fell below the standard of care.
 

 “[T]he trial court has broad discretion to determine the number of witnesses to be called by either party.”
 
 Elder v. Farulla,
 
 768 So.2d 1152, 1155 (Fla. 2d DCA 2000). “The range of subjects about which an expert witness will be allowed to testify are within the trial judge’s broad discretion.”
 
 Roseman v. Town Square Ass’n,
 
 810 So.2d 516, 522 (Fla. 4th DCA 2001). The surgeon contends that the patient was allowed effectively two expert witnesses instead of the one expert per specialty limitation outlined in the pretrial order. During trial, the patient argued that allowing her to have an additional expert would even up the sides, because the both the surgeon and manufacturer
 
 *707
 
 were permitted one expert, effectively meaning the defense would have two experts. Ultimately, the surgeon neither called his listed expert, nor requested permission to call a second additional expert orthopedic surgeon.
 

 The trial court was within its discretion to allow the testimony of the second expert orthopedic surgeon, Dr. Tid-well. Tidwell testified to the breach in the standard of care, in addition to his testimony as a fact witness. As the Fifth District has explained,
 

 The fact that it was corroborative of other testimony, or even cumulative to it, does not matter. A medical malpractice case is always necessarily a battle of expert witnesses. Within only very broad limits all qualified opinion testimony should be allowed; that is, not disallowed because it is cumulative to other evidence.
 

 Lake v. Clark,
 
 533 So.2d 797, 799 (Fla. 5th DCA 1988).
 

 Further during trial, the patient sought to introduce the eyewitness testimony of Julie Snogles, a surgical technician who had been present during the operation. During discovery, the patient had repeatedly requested contact information regarding Snogles, but despite court order, appellants never provided the information. The patient’s counsel did not locate the witness until he conducted an internet search during trial. The patient maintained there was no prejudice to appellants because they clearly knew of Snogles. Snogles’s name was in the hospital records and in the hospital’s answer to interrogatories.
 

 Appellants argued that they would be prejudiced by her testimony, as knowledge that she would testify would have affected their opening statement, their cross-examination of witnesses, and their defense. They would have investigated Snogles’s background and history for purposes of cross-examining her. After deposition, appellants further argued that they were prejudiced because Snogles named people in her deposition that they would have wanted to question.
 

 The court found that there was no surprise, because the patient had attempted to obtain the witness’s contact information, and both sides knew the witness’s name and of her presence in the operating room. Although the court concluded that the hospital either knew or should have known how to locate her, it found no evidence of willful nondisclosure or bad faith. The court ruled that taking the witness’s deposition cured any prejudice and that the hospital had not shown how it could have protected itself more by knowing of the witness sooner. The court permitted her to testify, concluding that her testimony would not endanger the fairness of the trial.
 

 Snogles testified that the patient was the second or third patient upon whom the surgeon had performed a hip arthroscopy. The surgeon told her that it was a new procedure and that he was new at performing the procedure. Halfway through the surgery, the surgeon created a third portal. Snogles asked him why he was making a third hole, and he said to remove a foreign object. She never saw a foreign object being removed, nor did she see him fracture either of the shavers.
 

 Whether this witness should have been allowed to testify is within the broad discretion of the trial court. The Florida Supreme Court in
 
 Binger v. King Pest Control,
 
 401 So.2d 1310, 1312 (Fla.1981), left the “ultimate control over witness disclosure problems to the broad discretion of the trial judge and focuses on prejudice in the preparation and trial of a lawsuit.”
 

 
 *708
 
 In determining if an undisclosed witness should be admitted, the trial court determines whether there is prejudice, which “refers to the surprise in fact of the objecting party, and it is not dependent on the adverse nature of the testimony.”
 
 Id.
 
 at 1314.
 
 Binger
 
 also lists the following other factors to be considered:
 

 (i) the objecting party’s ability to cure the prejudice or, similarly, his independent knowledge of the existence of the witness; (ii) the calling party’s possible intentional, or bad faith, noncompliance with the pretrial order; and (iii) the possible disruption of the orderly and efficient trial of the case (or other cases). If after considering these factors, and any others that are relevant, the trial court concludes that use of the undisclosed witness will not substantially endanger the fairness of the proceeding, the pretrial order mandating disclosure should be modified and the witness should be allowed to testify.
 

 Id.
 
 (footnote omitted).
 

 In the present case, since appellants certainly knew of the presence of the technician in the operating room, they could not be “surprised” by her “existence” as a possible witness. Appellants were able to depose her before her testimony. Further, there was no evidence of bad faith, since even the hospital which previously employed Snogles did not have contact information for this witness. Finally, there was no evidence presented that the introduction of this witness disrupted the orderly process of the trial, nor was there any concrete evidence how the introduction of this witness in the patient’s case specifically prejudiced appellants in their trial strategy. Although appellants claimed that they would have to call other witnesses and introduce other documents to counter Snogles’s testimony, they never attempted to do so, suggesting that they did not need to change their trial strategy to accommodate her testimony.
 

 Additionally during trial, the patient’s counsel advised the court that the Florida Supreme Court had issued
 
 Brandon Regional Hospital v. Murray,
 
 957 So.2d 590 (Fla.2007), an opinion permitting the discovery of the delineation of privileges, the document which lists the procedures that the surgeon was authorized to perform at the hospital. The trial court required the hospital to produce the document and admitted it into evidence over objection.
 

 A trial court’s decision to admit evidence is reviewed using the abuse of discretion standard of review, as limited by the rules of evidence.
 
 Nationwide Mut. Fire Ins. Co. v. Bruscarino,
 
 982 So.2d 753, 754 (Fla. 4th DCA 2008). “The standard of review for discovery orders is abuse of discretion.”
 
 Gold, Vann & White, P.A. v. DeBerry,
 
 639 So.2d 47, 56 (Fla. 4th DCA 1994).
 

 The Florida Supreme Court determined in
 
 Murray
 
 that “a claimant in a medical malpractice case is entitled to discovery of the privileges granted to a physician by a hospital, but is not entitled to the actual records of the credentials committee within the hospital that may have been involved in the process of determining those privileges.” 957 So.2d at 590. Appellants cannot show specifically how they were prejudiced by the trial court’s admission of this document. The surgeon further declined the opportunity to call an unlisted witness to explain this particular document. The admission of the document delineating the privileges of the surgeon was not an abuse of discretion by the trial court.
 

 Finally, during rebuttal closing arguments, the patient’s counsel made several comments which appellants claim were
 
 *709
 
 improper and require a new trial. As to those comments objected to contemporaneously by appellants, none warrant reversal.
 

 A trial court has broad discretion in ruling on motions for new trial and mistrial, and its denial of such motions is reviewed under an abuse of discretion standard.
 
 Brown v. Estate of Stuckey,
 
 749 So.2d 490 (Fla.1999);
 
 Izquierdo v. Gyroscope, Inc.,
 
 946 So.2d 115, 117 (Fla. 4th DCA 2007). “Generally, a mistrial or new trial should be granted only when counsel’s arguments are so inflammatory and prejudicial that they deny the opposing party a fair trial.”
 
 Maksad v. Kaskel,
 
 832 So.2d 788, 793 (Fla. 4th DCA 2002).
 

 Several of the remarks made by the patient in closing argument were not objected to at the time they were made. “[A] civil litigant may not seek relief in an appellate court based upon improper, but unobjected-to, closing argument, unless the litigant has at least challenged such argument in the trial court by way of a motion for new trial even if no objection was voiced during trial.”
 
 Murphy v. Int’l Robotic Sys., Inc.,
 
 766 So.2d 1010, 1027 (Fla.2000);
 
 see also Budget Rent A Car Sys., Inc. v. Jana,
 
 600 So.2d 466 (Fla. 4th DCA 1992). We, therefore, limit our review to those statements objected to, or at least those which were the basis of a motion for new trial.
 

 During trial, the patient presented testimony of Dr. Robert Spector, who referred to a document while testifying to the chronology of events. Defense counsel requested a copy of the document, but the patient’s counsel informed the court that the chronology was prepared by his law firm and that “it doesn’t go into evidence.” There were no further discussions or any rulings with respect to the chronology.
 

 During closing arguments, the patient’s counsel argued, ‘Where is the chronology? Why isn’t it in evidence if it’s so important? They didn’t move it into evidence.” The surgeon objected to this argument, contending, “That doesn’t come into evidence. That’s an inappropriate comment.”
 

 The patient’s counsel, in closing argument, also questioned where was the delineation of privileges that demonstrated that the surgeon had authorization to perform a hip arthroscopy at the hospital. The patient’s counsel stated, ‘We’ve been asking for it for years. And we get nothing. We get a stiff arm and a cocksure attorney who thinks that you’ve made up your mind.” Appellants objected to the characterization of the attorney as “cocksure,” and the court sustained the objection. After the closing argument and when the jury had exited the courtroom to deliberate, appellants’ attorney moved for a mistrial specifically regarding the “cocksure comment,” stating that it was a “cheap shot.” He also complained that there was no evidence that the patient had been asking for the delineation of privileges for years and that until recently it was privileged as a matter of law. The trial court reserved ruling, although it eventually denied the motion for mistrial.
 

 The trial court did not abuse its discretion in refusing to grant a mistrial or new trial. After the court sustained the objection to the “cocksure” attorney reference, the patient did not use the term again. As to the chronology argument, we believe that the argument was unfair where, during trial, the patient argued that it was inadmissible work product. It also could be considered somewhat disingenuous for the patient’s counsel to insinuate that appellants had failed to turn over the delineation of1 privileges where it had been privileged until a Florida Supreme Court decision was issued during trial. While these arguments could be considered close to running afoul the “permissible bounds
 
 *710
 
 of advocacy,”
 
 see Murphy,
 
 766 So.2d at 1035 (Pariente, J. concurring specially), we conclude that none of these comments, either individually or collectively, were so prejudicial as to deny appellants a fair trial.
 
 See Maksad,
 
 832 So.2d at 793.
 

 Because we affirm the final judgment in favor of the patient, we necessarily also affirm the appeal by appellants of the final judgment awarding the patient attorney’s fees and costs and the appeal by the patient of the final judgment in favor of the manufacturer and order granting the manufacturer’s motion to tax costs. Finally, we affirm the appeal by the manufacturer of the order denying its motion for attorney’s fees pursuant to
 
 Campbell v. Goldman,
 
 959 So.2d 223 (Fla.2007).
 

 Affirmed.
 

 GROSS, C.J., and WARNER J., concur.