LEVINE, J.
The issue presented is whether the trial court erred in denying the admission of the partial deposition that was not completed due to the death of the deponent, and in denying the admission of the deponent’s guilty plea in a related criminal case. We find that the trial court erred in excluding the partial deposition and the deponent’s guilty plea. We, therefore, reverse the trial court’s entry of a directed verdict and remand for a new trial. We also affirm as to the issue raised in appel-lee’s cross-appeal.
In his work for Harris Bank, Jacques Antoine was responsible for requisitioning official bank checks to cover expenses for relocating employees of the Bank of Montreal. Only Antoine had authority to access and make withdrawals from a certain business account. Antoine issued checks totaling $5.9 million to an Elizabeth Crowder, who had no affiliation with either bank. Of the $5.9 million issued to Crowder, about $1.7 million was issued back to the business account that Antoine had exclusively controlled.
In total, Antoine requisitioned 568 checks for “non-legitimate bank purposes,” and ultimately embezzled over $13 million from Bank of Montreal and Harris Bank. Subsequently, Antoine purchased real property in Weston, Florida for $640,000 with money from the same business account that was under his exclusive control. Eventually, Antoine pled guilty to criminal charges that were filed as result of the embezzlement.
Appellants Bank of Montreal and Harris Bank then filed a civil complaint against Antoine, Antoine’s wife, and Bank of America alleging counts for fraud, constructive trust, attachment, and garnishment. Appellants sought to impose an equitable lien on the property bought by Antoine in Weston. On March 6, 2007, *1264 Antoine, while in custody for the criminal charges to which he pleaded, testified at a deposition in connection with appellants’ civil case. Antoine’s wife was notified of the deposition and her counsel was present.[1] Antoine admitted to using money from the business account at Harris Bank to buy the property in Weston. Antoine was then asked, “[T]he source of that money from your account at Harris was monies that were embezzled from the bank?” Antoine responded, “Yes.”
At that point the deposition was terminated due to the fact that Antoine had chest pains. On March 13, 2007, Antoine died before the deposition could be completed. Antoine’s estate was substituted as a party after Antoine’s death. Antoine’s wife moved to strike the deposition as being incomplete, inasmuch as the wife did not have an opportunity to cross-examine Antoine during the deposition. The wife also moved to strike Antoine’s plea agreement. The trial court granted the wife’s motions and deemed the partial deposition and plea agreement of Antoine inadmissible. The trial court determined that the banks failed to show that any of the tainted funds were used to purchase the property in Weston. The trial court accordingly did not award appellants an equitable lien on the Weston property and granted a directed verdict in favor of the wife. This appeal and cross-appeal ensue.[2]
“A trial court’s decision to admit evidence is reviewed using the abuse of discretion standard of review, as limited by the rules of evidence.” Philippon v. Shreffler, 33 So.3d 704, 708 (Fla. 4th DCA 2010). “The general rule in Florida appears to be that ‘the right to cross-examine the witness must be accorded the party against whom the deposition is to. be used. A denial of this right, by lack of notice or in some other way, will render the deposition vulnerable to a motion to suppress.’ ” Brown v. Tanner, 164 So.2d 848, 854 (Fla. 1st DCA 1964) (Wigginton, J., concurring in part, dissenting in part) (citation omitted).
Former testimony is not excluded as hearsay, provided the declarant is unavailable and “the party against whom the testimony is now offered, or ... a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.” § 90.804(2)(a), Fla. Stat.
However, Florida Rule of Civil Procedure 1.330(a) provides that
[a]t the trial ... any part or all of a deposition may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice of it so far as admissible under the rules of evidence applied as though the witness were then present and testifying- in accordance with any of the following provisions:
[[Image here]]
(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (A) that the witness is dead....
Hearsay which is inadmissible because it does not satisfy the provisions of the former testimony rule will still be admissible if it satisfies the provisions of rule 1.330. Dinter v. Brewer, 420 So.2d 932, 934 (Fla. 3d DCA 1982) (citing J. Moore & H. Bendix, 11 Moore’s Federal Practice VHI-262 (1976)). Thus, even though Antoine died before the wife’s attorney had an opportu *1265 nity to cross examine him, the broad scope of rule 1.330 allows the admission of the entire deposition of Antoine to the extent it had progressed before his untimely death.
We are persuaded by the case of Derewecki v. Pennsylvania Railroad Co., 353 F.2d 436 (3d Cir.1965). In Derewecki, the plaintiff died from a heart attack fifteen minutes into a second deposition that was a continuation of the prior initial deposition. The defendant objected to the admissions of the depositions at trial “on the ground that they had not been completed and that it did not have the opportunity to exercise its ‘right’ to cross-examine” the plaintiff. Id. at 439. The Third Circuit Court of Appeals framed the issue before it as whether “the depositions were so incomplete by reason of the lack of cross-examination ... that to admit them into evidence constituted a denial of due process.” Id. at 440. The court centered its opinion on Federal Rule of Civil Procedure 26(d)(3), which stated that “[t]he deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: 1, that the witness is dead[.]” The court concluded that “adherence to the Rules of Civil Procedure is desirable and it appears that in the case at bar the conditions prescribed by Rule 26(d)(3) were adhered to.” Id. at 441. Similarly, in the present case we find it is desirable to adhere to the Florida Rules of Civil Procedure, in this case rule 1.330. Rule 1.330 contains similar language to rule 26(d)(3), which the Derewecki court relied on. Both rules serve the same objective: the admission of the deposition of a witness who is now dead, even before completion of cross-examination.
We are also persuaded by legal commentators who have discussed this particular, and somewhat unusual, situation. For example, one has explained that
Where the witness’ death or lasting illness would not have intervened to'prevent cross-examination but for the voluntary act of the witness himself or the party offering him — as, by a postponement or other interruption brought about immediately after the direct examination, it seems clear that the direct testimony must be struck out. Upon the same principle, the same result should follow where the illness is but temporary and the offering party might have reproduced the witness for cross-examination before the end of the trial. But, where the death or illness prevents cross-examination under such circumstances that no responsibility of any sort can be attributed to either the witness or his party, it seems harsh measure to strike out all that has been obtained on the direct examination.... The true solution would be to avoid any inflexible rule, and to leave it to the trial judge to admit the direct examination so far as the loss of cross-examination can be shown to him to be not in that instance a material loss.
3 Wigmore, Evidence § 1390 (2d ed. 1923) (footnotes omitted). See also Paulson v. Jefferies & Co., Inc., 2002 WL 34453504, at *4-5 (C.D.Cal. Mar. 20, 2002) (describing exclusion of deposition due to incomplete cross-examination resulting from witness’s death as a sanction that was not warranted where no fault was attributable to the proponent of the deposition).
Regarding a situation where the witness dies before the conclusion of cross-examination, another legal commentator has stated:
Here again it is usually said that the party denied cross-examination is entitled to have the direct testimony stricken.... [E]xclusion may very well be constitutionally compelled if the person was a state’s witness in a criminal case. *1266 Yet, at least in case of death, there is no adequate reason for striking the direct testimony.... No matter how valuable cross-examination may be, common sense tells us that the half-loaf of direct testimony is better than no bread at all.
1 McCormick, Evidence § 19 (Kenneth S. Broun ed., 6th ed. 2006) (footnotes omitted).
Early legal opinions have sustained the use of depositions where cross-examinations were not completed due to the death of the witness. In Fuller v. Rice, 70 Mass. 348 (1855), a deponent’s incomplete testimony was entered into evidence over objection that the deponent died before completing his testimony. The Chief Justice of the Supreme Judicial Court of Massachusetts found:
The deposition was rightly admitted under the circumstances. No general rule can be laid down in respect to unfinished testimony. If substantially complete, and the witness is prevented by sickness or death from finishing his testimony, whether viva voce or by deposition, it ought not to be rejected, but submitted to the jury with such observations as the particular circumstances may require.
Id. at 345.
In Forrest v. Kissam, 7 Hill 463 (N.Y.Sup.Ct.1844) (Walworth, Chancellor), another early legal opinion, New York’s Supreme Court of Judicature found that the trial court erred in rejecting the direct examination of a witness who died after the trial was adjourned but before the witness was cross-examined. The chancellor determined that
the decision of the referees in rejecting the testimony of Mr. Leggett was erroneous in point of law, and ... the judgment should be reversed.... [T]he plaintiff in error will of course be permitted to prove what Mr. Leggett swore to on his direct examination, in connection with the fact that he died before the adverse party had an opportunity to cross-examine him.

Id.

In Forrest, the highest court in New York specifically relied on historical cases to conclude that the direct testimony, without a cross-examination, would be admissible:
The earliest case on this subject is that of Lord Arundel v. Arundel, which was decided in the time of Lord Coventry, 1634. (1 Rep. in Ch. 90.) There, a witness who had been examined for the plaintiff, and was to have been cross-examined by the defendant, died before he could be cross-examined. Yet the court ordered his deposition to stand. In O’Callaghan v. Murphy, (2 Sch. & Lef. Rep. 158,) Lord Redesdale allowed the deposition of a witness to be read who had died after his direct examination had been completed, but before his cross-examination could be had.... Lord Redesdale compared it to the case of a witness dropping down dead at the trial at nisi prius, after his direct but before his cross-examination; in which case he thought the party producing the witness would not lose the benefit of the evidence he had already given.
And in the subsequent case of Nolan v. Shannon, (1 Moll. Rep. 157,) which came before Lord Chancellor Hart about thirty years later, where the witness had died the day after his examination in chief, and before he could be cross-examined, the chancellor directed that the deposition should be read at the hearing for whatever it was worth under the circumstances, although no cross-examination could be had.

Id.

Our conclusion is further supported by Waterman Steamship Corp. v. Gay Cot *1267 tons, 414 F.2d 724 (9th Cir.1969). In Waterman Steamship, a ship’s crewmem-ber stated in his deposition that he thought a piece of equipment on the ship was inoperative and told the ship’s captain. The deposition was postponed when the crewmember became ill, and the crew-member died before any cross-examination occurred. Relying in part on the deposition, the trial court determined that the defendant was negligent. On appeal, the Ninth Circuit Court of Appeals found that the defendant “has not shown that cross-examination would have helped it materially. Under these circumstances, the District Court did not err in admitting the deposition.” Id. at 728 (footnote omitted).[3]
The foregoing authorities establish that it is appropriate for us to consider the value that the wife’s cross-examination of Antoine would have provided to her defense. Forrest, 7 Hill 463 (Bockee, Senator) (“The benefit of the cross-examination is contingent and uncertain.”); Derewecki, 353 F.2d at 442 (“it is unlikely that anything of importance would have emerged from the cross-examination”); Waterman Steamship, 414 F.2d at 728. See also Duttle v. Bandler & Kass, 127 F.R.D. 46, 50 (S.D.N.Y.1989) (considering prejudice to party who lost ability to cross-examine). The wife contends that if Antoine had lived, she could have cross-examined him as to the quantity of embezzled funds that was used to purchase the Weston property. We do not consider the wife’s inability to cross-examine Antoine to have resulted in substantial prejudice. The wife lacked knowledge of Antoine’s embezzlement activity and the location of any funds that were embezzled. Accordingly, the benefit to be gained by the wife from cross-examining Antoine was speculative, and, as in Derewecki, the wife’s cross-examination was unlikely to have elicited “anything of importance.” Derewecki, 353 F.2d at 442. Put another way, the wife has not shown that the loss of her opportunity to cross-examine Antoine was a “material loss,” as dictated by Wigmore.
We also find that the trial court erred in excluding admission of Antoine’s plea agreement. The rule in Florida is
In civil actions where one of the issues is the guilt of a person convicted of a criminal offense, or some fact necessarily involved in the determination of such guilt, it is proper to admit evidence of that person’s plea of guilty to the criminal offense. The guilty plea is admissible as a declaration against interest and may be considered by the finder of fact, but it does not as a matter of law establish the truth of the facts upon which the judgment of guilt was rendered.
Hatfield v. York, 354 So.2d 426, 427 (Fla. 4th DCA 1978).
In the present case, Antoine’s plea agreement detailed that Antoine “caused Harris to issue checks payable to ... individuals and entities from whom defendant and Individual A [Crowder] purchased or intended to purchase assets, including automobiles, boats and real estate ...” and further that Antoine and “Individual A used Harris’s funds to pay personal expenses, including credit card bills, and to acquire assets for themselves, such as real estate.... ” We find that the trial court should have admitted Antoine’s plea agreement as it specifically was admissible as a declaration against Antoine’s interest insofar as it related to Antoine’s diversion of funds to purchase real estate.
*1268 In summary, we find that the trial court erred in excluding Antoine’s deposition testimony and plea agreement. When considered together, we are unconvinced “that it is more likely than not that the error[s] did not influence the trier of fact and thereby contribute to the verdict,” as Antoine was the only party with personal knowledge of the embezzlement. Special v. Baux, 79 So.3d 755, 756 (Fla. 4th DCA 2011) (en banc). Therefore, we reverse and remand for a new trial on the issue of whether the banks are entitled to an equitable lien on the Weston property.

Reversed, in part, affirmed in part, and remanded.

. It is undisputed that Antoine’s wife was not engaged in any of the embezzlement to which Antoine eventually pled guilty.

. We find the cross-appeal to be without merit.

. The court in 'Waterman Steamship also considered the fact that the case was tried to the bench, rather than to a jury, to be relevant. 414 F.2d at 728. The present case was similarly tried directly to the court.